## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO:

YVETTE NARANJO,

      Plaintiff,

v.

                                            **JURY TRIAL DEMANDED**

THE PLATINUM CONDOMINIUM
ASSOCIATION INC., FIRSTSERVICE
RESIDENTIAL FLORIDA, INC., and
ADRIANA OLMOS,

      Defendants.

_____/

### COMPLAINT

Plaintiff Yvette Naranjo ("Plaintiff") sues Defendant the Platinum Condominium Association Inc. ("Defendant PCA"), FirstService Residential Florida, Inc. ("Defendant FSRF"), and Defendant Adriana Olmos ("Defendant Olmos" and, together with Defendant PCA and Defendant FSRF, "Defendants") for violating 42 U.S.C. § 3601 *et seq.*, the federal Fair Housing Act (the "FHA") and § 760.20, *et seq.*, *Florida Statutes*, the Florida Fair Housing Act (the "FFHA"). Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### JURISDICTION AND VENUE

1.      Plaintiff brings this action against Defendants, in part, for violating 42 U.S.C. § 3601 *et seq.*, the federal Fair Housing Act. As such, jurisdiction of this Court exists for Plaintiff's federal Fair Housing Act Claims under 28 U.S.C §1331.

2.      Plaintiff brings this action against Defendants, in part, for violating § 760.20, *et seq.*, *Florida Statutes*, the Florida Fair Housing Act. The events underlying Plaintiff's Florida Fair Housing Act claims is the same conduct underlying Plaintiff's federal Fair Housing Act claims. As such, jurisdiction of this Court exists for Plaintiff's Florida Fair Housing Act claims under 28 U.S.C §1367.

3.      This Court has personal jurisdiction over Defendants and venue is proper in this District because the subject property is located in this District, Defendants transact business in this District, and the complained conduct of Defendants occurred in this District.

## PARTIES

4.      Plaintiff is a natural person and a citizen and resident of Florida.

5.      Defendant PCA is a Florida corporation with its principal place of business located in Miami, Florida.

6.      Defendant FSRF is a Florida corporation with its principal place of business located in Plantation, Florida.

7.      Defendant Olmos is a natural person and a citizen and resident of Florida.

8.      Unless otherwise indicated, the use of Defendant PCA's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant PCA.

9.      Unless otherwise indicated, the use of Defendant FSRF's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant FSRF.

## **FACTS**

***Background***

10.      For approximately eleven (11) years, Plaintiff resided in unit 806 within Platinum Condominium, a condominium complex located at 480 NE 30th St., Apt. 806, Miami, FL 33137 (the "Property"). While she resided at the Property, Plaintiff was assigned a standard, non-disabled parking space (the "Assigned Parking Space").

11.      At all times material hereto, the Property was under the rules and regulations of Defendant PCA, a condominium association formed and operating pursuant to applicable Florida law.

12.      At all times material hereto, the Property was managed by Defendant FSRF.

13.      At all times material hereto, Defendant Olmos was the property manager of the Property.

14.      Plaintiff has endured multiple foot surgeries over the past decade. These surgeries have significantly impacted Plaintiff's ability to walk without feeling pain. Plaintiff is often unable to carry out basic manual tasks without experiencing pain and having to lay down. As such, Plaintiff is "handicap" as that term is defined by the FHA. *See* 42 U.S.C. § 3602(h).

15.      The Assigned Parking Space is significantly narrower than the disabled parking spaces on the Property, providing Plaintiff much less room to maneuver in and out of her vehicle.

16.      Further, the Assigned Parking Space is located directly next to a concrete wall on one side and frequently has another parked vehicle on the other side, also allowing Plaintiff much less room to maneuver in and out of her vehicle.

17.      Further, at all times material hereto, the Assigned Parking Space frequently pooled with water when it rained, making the area within and surrounding the Assigned Parking Space slippery and dangerous for Plaintiff to maneuver with her disability.

3

18.     Thus, due to her disability, Plaintiff was unable to park safely and without experiencing pain in the Assigned Parking Space.

19.     The Property has five (5) disabled parking spaces. These disabled parking spaces are closer to the Property's main elevators than the Assigned Parking Space. In contrast, the Assigned Parking Space is closer to the Property's service elevator. However, the Property's service elevator is frequently reserved for individuals moving into and out of the Property and, during those times, are not usable.

20.     During the latter eight (8) years (approximate) of Plaintiff's residency at the Property, Plaintiff possessed a valid Disabled Persons Parking Identification Permit, issued pursuant to applicable Florida law. During this same time, Plaintiff utilized disabled parking spaces at the Property without issue and always maintained the required registration of her vehicle with Defendant PCA.

21.     While Plaintiff was disabled and residing at the Property, Plaintiff properly maintained registration of her valid Disabled Persons Parking Identification Permit with Defendant PCA. Thus, at all times material hereto, including but not limited to the entire year of 2023, Defendants were aware and knew that Plaintiff possessed a valid Disabled Persons Parking Identification Permit and, thus, that Plaintiff was "handicap," as that term is defined by the FHA.

***The Discriminatory Rule***

22.     On or about March 24, 2023, Defendant PCA held a board meeting (the "Board Meeting"). Prior to the Board Meeting, Defendant posted a notice in the Property's elevators which simply read "Approve Amendments to Rules and Regulations," with no mention of what rules and regulations were being amended.

23.     At the Board Meeting, Defendant PCA approved a new rule that significantly limited the use of the disabled parking spaces on the Property (the "Discriminatory Rule"). The Discriminatory

Rule *explicitly* limited parking in disabled parking spaces on the Property to two hours unless a disabled parking space was "rented." The Discriminatory Rule provided no explanation of how an individual, let alone a disabled individual, could obtain rental of a disabled parking space or how much Defendant PCA would charge for such rentals.

24.     Also, on or about March 24, 2023, but after the Board Meeting, the front desk clerk at the Property called Plaintiff and informed her of the Discriminatory Rule and requested that Plaintiff remove her vehicle from the disabled parking space in which it was parked.

25.     Plaintiff promptly read an e-mail from Defendant Olmos outlining the Discriminatory Rule. A true and correct copy of this e-mail is attached hereto as Exhibit "A."

26.     Immediately thereafter, Plaintiff asked the front desk clerk to have a board member of Defendant PCA or Defendant Olmos call Plaintiff to explain how she could go about renting a disabled parking space.

27.     After requesting a call from a board member of Defendant PCA or Defendant Olmos, Plaintiff made numerous calls to Defendant FSRF, Defendant Olmos, and the front desk all with the same intention: inquiring as to how she could rent a disabled parking space, in accordance with the Discriminatory Rule.

28.     None of Plaintiff's calls were addressed by Defendants.

***The Towing of Plaintiff's Vehicle by Defendants***

29.     On or about March 24, 2023, but after the Board Meeting, Plaintiff's vehicle was towed from a disabled parking space on the Property. Upon information and belief, Plaintiff's vehicle was towed at the request of Defendant FSRF and Defendant Olmos, in accordance with the Discriminatory Rule adopted by Defendant PCA, because Plaintiff's vehicle remained in a disabled parking space for more than two consecutive hours.

30.     When Plaintiff's vehicle was towed, Plaintiff's valid Disabled Persons Parking Identification Permit was clearly displayed on her vehicle's from windshield.

31.     When Plaintiff's vehicle was towed, three other vehicles were parked in disabled parking spaces, none of which had a valid Disabled Persons Parking Identification Permit on display.

32.     Unlike Plaintiff's vehicle, none of these three vehicles were towed that day.

33.     Approximately one week after Plaintiff's vehicle was towed, two of these vehicles remained illegally parked in disabled parking spaces on the Property, still without a valid Disabled Persons Parking Identification Permit on display.

34.     Approximately four weeks after Plaintiff's vehicle was towed, one of these vehicles remained illegally parked in a disabled parking space on the property, still without a valid Disabled Persons Parking Identification Permit on display.

35.     Upon information and belief, none of these three vehicles were ever towed from a disabled parking space by Defendants.

36.     By example only and without limitation, after the Discriminatory Rule was approved at the Board Meeting, but while Plaintiff still resided at the Property, one of the three above-described vehicles, a gold Cadillac, remained parked in a disabled parking space on the Property for over two hours, without a valid Disabled Persons Parking Identification Permit on display. Defendants did not tow the aforementioned gold Cadillac during this time.

37.     By example only and without limitation, Defendant Olmos has, on multiple occasions, parked her vehicle in a disabled parking space on the Property without a valid Disabled Persons Parking Identification Permit on display. Upon information and belief, Defendants have never towed Defendant Olmos' vehicle from a disabled parking space on the Property.

38.    Immediately after learning that her vehicle was towed, Plaintiff called Defendant FSRF and requested that a manager call her back. On the call, Plaintiff requested information on how to avoid being towed from a disabled parking space in the future. Plaintiff also requested information as to how she could rent a disabled parking space, in accordance with the Discriminatory Rule.

39.    Plaintiff never received a call back from Defendant FSRF.

40.    On or about March 29, 2023, Plaintiff sent a follow up e-mail to Defendant Olmos and requested information on how she could rent a disabled parking space, in accordance with the Discriminatory Rule.

41.    That same day, Defendant Olmos e-mailed Plaintiff back but did not provide any information as to how Plaintiff could rent a disabled parking space. Defendant Olmos stated that Defendant FSRF would not discuss the matter further with Plaintiff because Plaintiff had informed an agent of Defendant FSRF that she was considering hiring an attorney.

42.    Plaintiff immediately thereafter e-mailed Defendant Olmos, multiple board members of Defendant PCA, and the regional director for Defendant FSRF to clarify that she had not yet hired an attorney and that she simply wanted information regarding how she could park in a disabled parking space, in accordance with the Discriminatory Rule.

43.    A true and correct copy of the above-described e-mail exchange is attached hereto as Exhibit "B."

44.    Plaintiff still received no response or information directly from any of Defendants regarding how she could rent a disabled parking space, in accordance with the Discriminatory Rule.

45.    After not receiving any response from Defendants, on or about March 31, 2023, Plaintiff was forced to retain an attorney to send a demand letter to Defendants.

46.     Plaintiff incurred approximately $5,000.00 in legal expenses and was still unable to obtain rental of a disabled parking space from Defendants.

***Plaintiff's Decision to Move***

47.     Since the date Plaintiff's vehicle was towed, but before Plaintiff moved away from the property, Plaintiff spent most nights away from the Property. On the select nights that Plaintiff did stay at the Property, she had her boyfriend pull her vehicle into the Assigned Parking Space. This was because Plaintiff was unable to park in the Assigned Parking Space without risking injury or experiencing pain, due to her disability.

48.     On or about May 2, 2023, Plaintiff gave Defendant Olmos notice that she would be vacating her unit on the Property and moving away.

49.     Plaintiff's decision to move away was based primarily on Plaintiff not knowing when or if she would ever be able to park in a disabled parking space on the Property again.

50.     Overall, Plaintiff could not continue to risk injury and pain from having to park in the Assigned Parking Space, which, as detailed above, was too narrow and located too far away from the Property's main elevators.

51.     Plaintiff, a relator, was hired by her landlord to find a new tenant for her unit.

52.     In her May 2, 2023, e-mail to Defendant Olmos, Plaintiff asked Defendant Olmos questions regarding the move-out process and requested details that Plaintiff needed to place the unit for rent (as the realtor).

53.     On or about May 3, 2023, in response to Plaintiff's May 2, 2023, e-mail, Defendant Olmos e-mailed Plaintiff but did not answer any of Plaintiff's questions regarding the move-out process. Further, Defendant Olmos did not provide details that Plaintiff needed to place the unit for rent and seek prospective tenants.

54.     On or about May 4, 2023, in response to Defendant Olmos' May 3, 2023, e-mail, Plaintiff e-mailed Defendant Olmos again, this time copying the regional director of Defendant FSRF and general counsel for Defendant PCA. In this e-mail, Plaintiff again reiterated her unanswered questions.

55.     A true and correct copy of the above-described e-mail exchange is attached hereto as Exhibit "C."

56.     On or about May 5, 2023, Defendant PCA, by and through its general counsel, e-mailed Plaintiff's attorney and explained that Defendant PCA would, "for the time being," allow Plaintiff to park in a disabled parking space. This proposed temporary accommodation was expressly conditioned on Plaintiff forfeiting the Assigned Parking Space.

57.     In this same e-mail, Defendant PCA, by and through its general counsel, also admitted that they had previously been provided with a valid Disabled Persons Parking Identification Permit by Plaintiff in January 2023. This is evidence that Defendant FSRF had knowledge of Plaintiff's disability since at least January 2023, including throughout all the above-described events that transpired after the Board Meeting.

58.     By the time Defendant PCA informed Plaintiff, by and through their general counsel, that Defendant PCA would temporarily allow her to park in a disabled parking space, Plaintiff had already hired movers and arranged for new housing accommodations.

59.     On or about May 20, 2023, Plaintiff vacated her unit and moved away from the Property.

60.     As a result of Defendants actions and inactions as described herein, Plaintiff was forced to move from the place she called home for approximately eleven (11) years. This has caused Plaintiff's emotional distress-related damages as further detailed below.

61.     As of the date of the filing of this Complaint, Plaintiff still has not been able to find permanent housing accommodations. Due to a heightened real estate market, Plaintiff has been forced to move between Palm Beach gardens, Broward County, two different locations in Miami Beach, and Boca Raton. This has caused Plaintiff's emotional distress-related damages as further detailed below

62.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to: (1) emotional distress, mental distress, psychological harm, depression, and emotional pain and suffering; (2) disruption to family and social relationships; (3) a compromised immune system, which has resulted in Plaintiff becoming physically ill on multiple occasions and even being hospitalized; (4) legal fees that Plaintiff incurred in an attempt to obtain rental of a disabled parking space; (5) moving expenses; and (6) towing fees.

**COUNT I**
**VIOLATIONS OF 42 U.S.C. § 3604(c)**
**(By Plaintiff Against Defendant PCA)**

63.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-62 as if fully set forth herein.

64.     Section 3604(c) of the federal Fair Housing Act states that it shall be unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, **handicap**, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C § 3604(c) (emphasis added).

65.     Plaintiff possesses a disability and, therefore, belongs to a class of persons whom the federal Fair Housing Act protects from unlawful discrimination.

66.     By and through its approval of the Discriminatory Rule at the Board Meeting, Defendant PCA made, printed, and/or published or caused to be made, printed, or published a discriminatory statement.

67.     By and through her reading of the e-mail disseminated by Defendant PCA following the Board Meeting, Plaintiff personally read the discriminatory statement.

68.     By and through its approval and subsequent enforcement of the Discriminatory Rule, Defendant PCA confirmed its intent to indicate or express a preference or limitation based on Plaintiff's disability.

69.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to: (1) emotional distress, mental distress, psychological harm, depression, and emotional pain and suffering; (2) disruption to family and social relationships; (3) a compromised immune system, which has resulted in Plaintiff becoming physically ill on multiple occasions and even being hospitalized; (4) legal fees that Plaintiff incurred in an attempt to obtain rental of a disabled parking space; (5) moving expenses; and (6) towing fees.

70.     **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

   a.   Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the federal Fair Housing Act;

   b.   Award actual and punitive damages to Plaintiff against Defendants;

   c.   Award Plaintiff costs and reasonable attorneys' fees; and

   d.   Award any other relief that this Court deems appropriate and just under the circumstances.

11

## COUNT II
## <u>VIOLATIONS OF 42 U.S.C. § 3604(f)</u>
### (By Plaintiff Against Defendants)

71.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-62 as if fully set forth herein.

72.     Section 3604(f)(2)(A) of the federal Fair Housing Act states that it shall be unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C § 3604(b).

73.     Plaintiff possesses a disability and, therefore, belongs to a class of persons whom the federal Fair Housing Act protects from unlawful discrimination.

74.     Plaintiff was qualified, ready, willing, and able to use a disabled parking space on the Property consistent with the terms, policies, and procedures of Defendants.

75.     On multiple occasions, Plaintiff requested use of a disabled parking space consistent with the terms, policies, and procedures of Defendants for all persons who were qualified or eligible for such use.

76.     Defendants, with knowledge of Plaintiff's disability, willfully failed and/or refused to permit Plaintiff's use of a disabled parking space under the same terms and conditions that were applicable to all persons who were qualified or eligible for such use.

77.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include but are not limited to: (1) emotional distress, mental distress, psychological harm, depression, and emotional pain and suffering; (2) disruption to family and social relationships; (3) a compromised immune system, which has resulted in Plaintiff becoming

12

physically ill on multiple occasions and even being hospitalized; (4) legal fees that Plaintiff incurred in an attempt to obtain rental of a disabled parking space; (5) moving expenses; and (6) towing fees.

78.    **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

    a.   Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the federal Fair Housing Act;

    b.   Award actual and punitive damages to Plaintiff against Defendants;

    c.   Award Plaintiff costs and reasonable attorneys' fees; and

    d.   Award any other relief that this Court deems appropriate and just under the circumstances.

**COUNT III**
**VIOLATIONS OF § 760.23(3), *Florida Statutes***
**(By Plaintiff Against Defendant PCA)**

79.    Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-63 as if fully set forth herein.

80.    Section 760.23(3) of the Florida Fair Housing Act states that it shall be unlawful "to make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, national origin, sex, **disability**, familial status, or religion or an intention to make any such preference, limitation, or discrimination." Fla. Stat. § 760.23(3) (emphasis added).

81.    Plaintiff possesses a disability and, therefore, belongs to a class of persons whom the federal Fair Housing Act protects from unlawful discrimination.

82.     By and through its approval of the Discriminatory Rule at the Board Meeting, Defendant PCA made, printed, and/or published or caused to be made, printed, or published a discriminatory statement.

83.     By and through her reading of the e-mail disseminated by Defendant PCA following the Board Meeting, Plaintiff personally read the discriminatory statement.

84.     By and through its approval and subsequent enforcement of the Discriminatory Rule, Defendant PCA confirmed its intent to indicate or express a preference or limitation based on Plaintiff's disability.

85.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include but are not limited to: (1) emotional distress, mental distress, psychological harm, depression, and emotional pain and suffering; (2) disruption to family and social relationships; (3) a compromised immune system, which has resulted in Plaintiff becoming physically ill on multiple occasions and even being hospitalized; (4) legal fees that Plaintiff incurred in an attempt to obtain rental of a disabled parking space; (5) moving expenses; and (6) towing fees.

86.     **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

    a.  Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the federal Fair Housing Act;

    b.  Award actual and punitive damages to Plaintiff against Defendants;

    c.  Award Plaintiff costs and reasonable attorneys' fees; and

    d.  Award any other relief that this Court deems appropriate and just under the circumstances.

**COUNT IV**
**VIOLATIONS OF § 760.23(2), *Florida Statutes***
**(By Plaintiff Against Defendants)**

87.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-63 as if fully set forth herein.

88.     Section 760.23(2) of the Florida Fair Housing Act states that it shall be unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, **disability**, familial status, or religion." Fla. Stat. § 760.23(2).

89.     Plaintiff possesses a disability and, therefore, belongs to a class of persons whom the federal Fair Housing Act protects from unlawful discrimination.

90.     Plaintiff was qualified, ready, willing, and able to use a disabled parking space on the Property consistent with the terms, policies, and procedures of Defendants.

91.     On multiple occasions, Plaintiff requested use of a disabled parking space consistent with the terms, policies, and procedures of Defendants for all persons who were qualified or eligible for such use.

92.     Defendants, with knowledge of Plaintiff's disability, willfully failed and/or refused to permit Plaintiff's use of a disabled parking space under the same terms and conditions that were applicable to all persons who were qualified or eligible for such use.

93.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to: (1) emotional distress, mental distress, psychological harm, depression, and emotional pain and suffering; (2) disruption to family and social relationships; (3) a compromised immune system, which has resulted in Plaintiff becoming

physically ill on multiple occasions and even being hospitalized; (4) legal fees that Plaintiff incurred in an attempt to obtain rental of a disabled parking space; (5) moving expenses; and (6) towing fees.

94.     **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

a.   Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the federal Fair Housing Act;

b.   Award actual and punitive damages to Plaintiff against Defendants;

c.   Award Plaintiff costs and reasonable attorneys' fees; and

d.   Award any other relief that this Court deems appropriate and just under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: October 18, 2024

Respectfully Submitted,

/s/ Zane C. Hedaya
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**
Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
**GERALD D. LANE, JR., ESQ.**
Florida Bar No.: 1044677
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136

*COUNSEL FOR PLAINTIFF*